UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT PAONE,

                         Plaintiff,

             v.

SIEMENS HEALTHCARE DIAGNOSTICS INC.
a/k/a SIEMENS HEALTHINEERS,

                         Defendant.

**Case No. 22-CV-9644**

**COMPLAINT**

**ECF CASE**

COMES NOW PLAINTIFF Robert Paone, by his undersigned attorney, for his complaint against Defendant Siemens Healthcare Diagnostics Inc. a/k/a Siemens Healthineers, and alleging as follows:

**NATURE OF THE ACTION**

1.      This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, wrongly denied his requested religious exemption, and as a result illegally terminated his employment.  Plaintiff asserts a concurrent claim under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*  This is not an action challenging the legality of the COVID-19 vaccination policy itself.  By this action, Plaintiff seeks all legal and equitable relief available, including reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.  Plaintiff demands trial by jury.

## PARTIES

2.      Plaintiff **Robert Paone** is an adult resident of Dingmans Ferry, Pennsylvania (Pike County).  At all relevant times, Paone was an "employee" of Defendant within the meaning of Title VII and applicable state law.  For purposes of this action, Paone is a citizen of Pennsylvania.

3.      Defendant **Siemens Healthcare Diagnostics Inc. a/k/a Siemens Healthineers ("Siemens Healthineers")** is a California corporation with its principal place of business in Tarrytown, New York (Westchester County).  Upon information and belief, at all relevant times, Siemens Healthineers had more than 500 employees.  At all relevant times, Siemens Healthineers was Plaintiff's "employer" within the meaning of Title VII and applicable state law.  For purposes of this action, Siemens Healthineers is a citizen of California and New York.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5.      This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity), because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Alternatively, this Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, because Plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

7.    This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

8.    Plaintiff properly exhausted his administrative remedies under Title VII prior to filing this action.

9.    On or about March 29, 2022, within 180 days of the alleged discriminatory acts, Paone filed a charge of discrimination against Siemens Healthineers with the U.S. Equal Employment Opportunity Commission (EEOC). The charge was assigned charge number 520-2022-01355.

10.    On September 1, 2022, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as **Exhibit A**.

11.    This action was filed within 90 days of Paone's receipt of the Notice of Right to Sue.

12.    There are no administrative exhaustion requirements for Plaintiff's claim under the New York State Human Rights Law.

## ALLEGATIONS

13.    Paone was hired by Siemens Healthineers on or about July 20, 2015.

14.    At all relevant times, Paone worked as a Customer Service Technician Level 3 (also referred to as Field Service Engineer). His job duties included installing, servicing, maintaining, and modifying laboratory diagnostic equipment at customer sites.  This was a full-time position.

15.     At all relevant times, Paone was qualified for his position and performed his duties in a satisfactory manner.

*Defendant's COVID-19 Vaccination Policy and*
*Paone's Request for a Religious Exemption*

16.     On or about August 31, 2021, Siemens Healthineers announced that the company "requires full vaccination for COVID-19 for employees and non-employee workers."  Employees who are "[c]ustomer-facing or who come on site, whether regularly or occasionally, at any Siemens Healthineers or customer/business partner site" were required to be fully vaccinated by October 15, 2021.

17.     Defendant's   COVID-19   vaccination   policy   provided   that "[a]ccommodations may be requested for certain medical or religious reasons."  The accompanying reasonable accommodation policy further provided that "Siemens Healthineers allows for exemptions to COVID-19 immunization requirements as a reasonable accommodation to assist any employee . . . who objects based on sincerely held religious beliefs and practices."

18.     The legal authorities for the COVID-19 vaccination policy cited by Defendant in its position statement to the EEOC, including Executive Order 14042 (as implemented through the Safer Federal Workforce Task Force) and the Centers for Medicare & Medicaid Services mandate dated November 5, 2021, included provisions expressly acknowledging that employees were legally entitled to reasonable accommodations for their sincerely held religious beliefs.

19.     Prior to the mandatory vaccination policy, Defendant's COVID-19 safety protocols for all employees included: "wearing face coverings and other personal protective equipment; strictly adhering to respiratory and hand hygiene

and symptom screening practices; observing social distancing, occupancy, activity and quarantine restrictions; and complying with all other COVID-19 precautions as instructed by the Company."   All of these precautions were deemed adequate to mitigate the risk of catching or spreading COVID-19.

20.    On or about September 7, 2021, Paone submitted a request for a religious exemption to Defendant's COVID-19 vaccination policy, using the prescribed forms and following the prescribed procedures.

21.    Paone is a Christian.

22.    In his application for a religious exemption, Paone stated:  "It is against my relig[i]ous beliefs to be mandated into taking a Covid-19 vaccine."

23.    Paone explained, *inter alia*: "Faith in God is all we need"; "God has created us in his image and has given us everything we need in this world"; and "[t]aking a vaccine d[i]minishes our faith in God because we do not trust in his design."  Paone also referenced the Book of Revelation and objected to mandatory vaccination, vaccine registration, and vaccine passports on the grounds that they represented the mark of the beast.  Paone further explained, *inter alia*:  "It is my belief that [G]od has given man and women everything they need at birth and our immune systems were by design.  We need to trust in God to take care of us.  This is the very core of Christian faith and taking a vaccine goes against that."  Paone supported his position with biblical references and quotations.

24.    In his application, the reasonable accommodations proposed by Paone included wearing N95 masks in the workplace, getting tested once or twice per week at his own expense, being assigned to laboratories that do not require COVID-19 vaccination, working remotely to repair and deliver sub-assemblies to engineers in the field, and working phone support.

25.     The EEOC has published extensive guidance relating to COVID-19. In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

*Id.* § K.2 (Vaccinations – Overview).    These are precisely the reasonable accommodations at issue here – masking, social distancing, testing, and reassignment – that Paone could have followed in lieu of the COVID-19 vaccine.

26.     On September 15, 2021, Siemens Healthineers acknowledged receipt of Paone's application and emailed him follow-up questions relating to his primary customer accounts, how frequently he visits each customer, where they are located, what their COVID-19 vaccination requirements are, and how often he goes to a Siemens Healthineers office.

27.     Paone responded to the questions by email on September 20, 2021. Paone explained that his primary account at that time was White Plains Hospital in New York, where he went "quite often" and sometimes "every week," but that he believed that account was going to be assigned to someone else because his manager, Arthur Ebert, told him he was going to start focusing on laboratories in New Jersey. Paone also noted that he rarely worked at a Siemens Healthineers office.

28.     Siemens Healthineers also emailed Paone's manager, Arthur Ebert, with a similar set of questions, to which Ebert responded on September 22, 2021. Ebert stated, *inter alia*:  "Rob was in transition to take on new accounts in NJ but I have held off assigning new primary density due to Rob not having his vaccine.  His current primary density resides in only one hospital, White Plains Medical Center. White Plains uses Vender Mate as its vendor credentialling [sic] company.  Both the Hospital and Vendor Mate are stating the facility requires the Covid vaccine.  Rob is also the backup/tertiary and on call for many hospitals in the NY, NJ, CT region. . . . There may be a requirement from one of the 100s of hospitals where Rob would not be able to enter the facility due to not having the Covid vaccine.  Rob will also be required to attend additional training in Cary [Siemens Healthineers training facility in Cary, North Carolina] for new products as needed."

29.     On October 15, 2021, Siemens Healthineers Human Resources emailed Paone to inform him that "[w]ithout addressing and irrespective of the sincerity of your religious belief, we have carefully reviewed your request and based on your role as a customer-facing employee in a healthcare organization and the impact on the business, we are unable to accommodate your request."  The email further stated:  "Critical reactive service needs are immediate, and as you experience every day, can have a direct impact on hospital functioning, testing down time, and ultimately patient care.  The ability to efficiently dispatch to our customers and limit quarantine times with a vaccinated workforce that is able to immediately meet any hospital requirement is key to our core Service values."

30.     In denying Paone's religious exemption, Siemens Healthineers did not engage in the interactive process with Paone.

31.     In denying Paone's religious exemption, Siemens Healthineers did not question the sincerity of Paone's religious objections to the COVID-19 vaccine.

32.     Defendant's October 15 email required Paone to "provide proof that you have started your vaccine series by Thursday, October 21, 2021," otherwise "you will be placed on an unpaid suspension status effective Monday, October 25, 2021." The email further explained that, while on unpaid leave status, Paone "will continue to have the opportunity comply if you start your vaccine series and provide proof by November 11, 2021." If not, "we will consider you to have voluntarily resigned from the organization effective November 14, 2021."

*No Undue Burden on Defendant's Business*

33.     Defendant's alleged concerns about the impact on its business of allowing Paone to work unvaccinated were purely speculative.

34.     In his September 22 email to HR, Paone's manager, Arthur Ebert, blatantly speculated that "[t]here may be a requirement from one of the 100s of hospitals where Rob would not be able to enter the facility due to not having the Covid vaccine." Ebert provided no specific, concrete examples where Paone had been denied access to a customer site due to his being unvaccinated. Moreover, Ebert's email underscores that there were "100s of hospitals" where Paone could be assigned to work.

35.     Notably, despite denying Paone's requested exemption on the grounds that his working while unvaccinated was incompatible with the needs of the business, Siemens Healthineers allowed Paone to "remain actively working until October 22, 2021." Furthermore, the various deadlines described in the October 15 email were extended by the company, and consequently Paone was allowed to continue working unvaccinated for the entire month of October 2021.

8

36.    There is no evidence in the record (including Defendant's position statement to the EEOC) of any customer objecting to Paone working at its facility while unvaccinated.

37.    There is no evidence in the record (including Defendant's position statement to the EEOC) of how many customers "in the NY, NJ, CT region" would have objected to Paone working at their facilities while unvaccinated.

38.    There is no evidence in the record (including Defendant's position statement to the EEOC) of how many customers "in the NY, NJ, CT region" would *not* have objected to Paone working at their facilities while unvaccinated.

39.    There is no evidence in the record (including Defendant's position statement to the EEOC) of Siemens Healthineers actually investigating and evaluating whether or not Paone could have been granted an exemption without causing an undue burden on its business.

40.    To the extent that Defendant contends that weekly COVID-19 testing would have imposed more than *de minimis* cost on the company, Paone offered to pay himself for the testing.

*No Undue Risk to Other Persons*

41.    It would not have caused an undue risk to other persons of catching COVID-19 to allow Paone to work unvaccinated, while following other required COVID-19 precautions (e.g., masking, social distancing, testing).

42.    Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective.  On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be less virulent than previous waves have been.

43.     Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines *do not prevent the transmission of the virus*.

44.     On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it.  But what they can't do anymore is prevent transmission."

45.     This was confirmed recently by Dr. Deborah Birx, former White House Coronavirus Response Coordinator, who told Fox News on July 22, 2022, that she "knew these vaccines were not going to protect against infection. . . ."

46.     Even Dr. Anthony Fauci has admitted, during an interview with Fox News on July 12, 2022, that the "vaccines – because of the high degree of transmissibility of this virus – don't protect overly well, as it were, against infection . . . ."

47.     A senior Pfizer executive recently admitted during a parliamentary hearing that the company did not know whether or not its COVID-19 vaccine prevented transmission of the virus when the vaccine was first rolled out.

48.     Indeed, it is possible that unvaccinated employees who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious, and therefore can self-quarantine and consequently will be less likely to transmit the virus unknowingly, than vaccinated employees who do not undergo regular testing.

49.     In short, there is no objective, scientific basis for Defendant to argue that granting Paone's religious exemption and allowing him to work unvaccinated, while following other required COVID-19 precautions (e.g., masking, social

distancing, testing), would have posed an undue risk to other persons of catching and becoming sick from COVID-19.  This is pure speculation and fear-mongering.

*Paone's Termination*

50.   On October 28, 2021, Paone sent several emails to human resources and his manager, *inter alia*, seeking a further extension of the deadline for compliance (so as to keep his job as long as possible) and asking for an explanation "why my religious exemption was denied in detail and what the undue hardship to the company is, especially since my duties have not changed since this mandate.  I also want to know why being tested is an unreasonable accommodation but being fired is reasonable for having religious beliefs."

51.   Jean Kelly of HR responded to Paone's emails on October 29, 2021, stating:  "As communicated previously, all customer facing employees, and employees that go on-site regularly or occasionally were required to be vaccinated for COVID-19 by October 15, 2021."  No further explanation was provided.  Kelly's email "confirm[ed] that you will be placed in an unpaid suspended status effective Monday, November 1, 2021, due to noncompliance with" the company's COVID-19 vaccination policy, and that, without submitting proof of vaccination by November 11, 2021, "your last day of employment will be November 12, 2021."

52.   Paone was placed on unpaid leave on November 1, 2021.

53.   When Paone continued to abide by his good faith religious objections to the COVID-19 vaccination policy, he was terminated on or about November 12, 2021.

54.   Following his termination by Siemens Healthineers, Paone diligently pursued alternative employment.  He worked as a temporary employee in a factory.  He worked as an elevator maintenance worker.  Recently he obtained a position

repairing pharmaceutical equipment.  All of these jobs paid significantly less than his job with Siemens Healthineers.

55.     This entire experience has caused Paone significant mental and emotional distress and personal and financial hardship.

## COUNT ONE:  VIOLATION OF TITLE VII

56.     By denying his religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Plaintiff's rights under Title VII.

57.     Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

58.     Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

59.     Defendant was recklessly indifferent to Paone's federally protected rights.

60.     As a direct and proximate result of Defendant's discriminatory conduct, Paone has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

### COUNT TWO:  VIOLATION OF STATE HUMAN RIGHTS LAW

61.     By denying his religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Paone's rights under the New York State Human Rights Law.

62.     The State Human Rights Law provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  The State Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business."  *Id.* § 296(10)(a).

63.     Defendant was recklessly indifferent to Paone's state law rights.

64.     As a direct and proximate result of Defendant's discriminatory conduct, Paone has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on his claims under Title VII and the New York State Human Rights Law, and award him the following relief:

A.     Reinstatement to the same or equivalent position;

B.     Back pay in an amount to be determined at trial;

C.     Front pay in an amount to be determined at trial;

D.     Out of pocket costs in an amount to be determined at trial;

E.     Compensatory damages in an amount to be determined at trial;

F.     Punitive damages in an amount to be determined at trial;

G.     Pre-judgment and post-judgment interest;

H.     Attorney's fees and costs;

I.     Appropriate injunctive relief; and

14

J.      Such other relief as justice may require.


Dated:  November 11, 2022

                                    Respectfully submitted,

                                    *Steven M. Warshawsky*

                    By:     _____
                                    STEVEN M. WARSHAWSKY
                                    The Warshawsky Law Firm
                                    *Attorney for Robert Paone*
                                    118 South Bedford Road, Suite 100
                                    Mount Kisco, New York  10549
                                    Tel:  (914) 864-3353
                                    Email:  smw@warshawskylawfirm.com
                                    Web:  www.warshawskylawfirm.com